David **HEHL**, Plaintiff–Appellee,

v.

**CITY OF AVON LAKE, et al.,**
Defendants–Appellants.

No. 02–3406.

United States Court of Appeals,
Sixth Circuit.

Jan. 20, 2004.

Avery S. Friedman Friedman & Associates, Kenneth D. Myers, Cleveland, OH, for Plaintiff–Appellee.

George S. Crisci, Thomas H. Barnard, Jr., Britt J. Rossiter, Ulmer & Berne, Cleveland, OH, Geoffrey R. Smith, Smith & Smith, Avon Lake, OH, for Defendants–Appellants.

Before ROGERS and COOK, Circuit Judges, and COHN, District Judge.[*]

COHN, District Judge.

This case involves the enforcement of a settlement agreement in an employment case claiming wrongful termination in retaliation for the exercise of First Amendment rights. Defendants–Appellants, the City of Avon Lake, Vincent M. Urban. and Wade Mertz (collectively, "Avon Lake") appeal from the district court's order granting Plaintiff–Appellee David Hehl's ("Hehl") motion to enforce the settlement agreement. The issues on appeal are whether the district court retained jurisdiction to enforce the settlement agreement and if so, whether the district court abused its discretion in the manner in which it directed enforcement of the settlement agreement. For the reasons that follow, we find that the district court did not retain jurisdiction and therefore reverse and remand this matter to the district court for dismissal of the case for lack of subject matter jurisdiction.

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.  BACKGROUND

Hehl was an employee of the engineering department of Avon Lake for approximately eighteen years.  On December 21, 1999.  Hehl filed a complaint against Avon Lake claiming that he was retaliated against for exercising his First Amendment rights.  He also sought a temporary restraining order and preliminary injunction requesting reinstatement to his former position.  Hehl's request for injunctive relief was the subject of a preliminary injunction hearing on January 13, 2000 before a magistrate judge.  During the course of the hearing the parties reached an agreement to settle the case.

The settlement negotiations were directed toward allowing Hehl, who was then fifty-seven years old, to retire with his pension under the Public Employee Retirement System ("PERS").  Both parties believed that Hehl needed an additional seven years of service credit to add up to twenty-five years of service.  The settlement therefore required Avon Lake to purchase four years of service credit that when added with Hehl's eighteen years of existing service plus three years military service would equal twenty-five years of service and make him eligible for a pension.  Both parties also believed that the amount of the pension would be about 52% of his last three years' average salary.  This figure was based on the assumption that PERS benefits are calculated the same as benefits under the School Employee Retirement System and the State Teachers Retirement System ("STRS").  Neither party, however, verified the computations of benefits under PERS.

The parties' memorialized their agreement as to Hehl's pension benefit as follows:

K. . . .   [Avon Lake] and Hehl agree that Hehl shall receive the following:

. . .

Subject to the approval of Public Employees Retirement Board, the payment by the City of up to four (4) years of employment service credit as part of an early retirement incentive program for eligible employees of the City's Engineering Department, that would permit Hehl to collect his PERS pension beginning on July 1, 200 at the rate of fifty-two percent (52%) of his salary based on an average of his last three years' earning, provided that Hehl purchases an additional three (3) years of service credit for prior military service on or before April 1, 2000.  It is expressly understood by all parties that, with these purchases of service credit, Hehl shall be eligible for a retirement pension under the Public Employees Retirement Systems.  Should the Public Employees Retirement Board refuse to authorize the purchases of employment service credit described above, then the parties shall agree to negotiate an alternative settlement.

The settlement agreement also contains the following dispute resolution provision:

The parties agree that this Agreement shall be construed under the laws of the State of Ohio. The parties consent to the jurisdiction and venue of the Loraine County Court of Common Pleas in any legal action to enforce and construe the terms of this Agreement, except that the parties agree that in the event of impossibility of performance of paragraph K(4) [set forth above], the parties shall invoke the jurisdiction of the U.S. District Court for the purpose of attempting to negotiate an alternative settlement, and in the event that said negotiation does not result in a settlement, the parties agree that Hehl is entitled to move the U.S. District Court for reinstatement of the case, without objection.

Upon learning that the case had settled, on January 26, 2000, the district court entered an order dismissing the case which states in toto:

The above captioned case was referred to Magistrate Judge David S. Perelman to conduct pre-trial matters. Magistrate Judge Perelman informed the Court that counsel for the parties have indicated that the case is settled and dismissed with prejudice.

Therefore, this case is dismissed with prejudice, costs to each party. Parties may supplement final entry within thirty days.

It is undisputed that neither party petitioned the district court for any relief or supplemented the judgment within thirty days.

About eight months after the case was dismissed, Hehl learned from PERS that his monthly benefit would only be 75% of the 52% of his last three years' average earnings, or approximately 39% of his last three years' average earnings because he was retiring before age 65 with less than 30 years of service credit. Despite the change in benefit, Hehl submitted a completed application to PERS for these reduced benefits in October of 2000. PERS sent him his first check in November with a letter stating not to cash the check if he decided not to retire. Hehl cashed the check and continues to receive his PERS pension. According to Avon Lake, now that Hehl is in the PERS system, "this process has become irreversible."

At about the time Hehl learned of the reduced benefit, counsel for Avon Lake left a voice message with Hehl's counsel stating that he had "screwed up" in thinking that PERS benefits were calculated the same as benefits under the STRS. The parties then attempted to resolve the discrepancy, which included a phone conference with the magistrate judge, but to no avail.

About six months later, on April 10, 2001. Hehl filed a motion in the district court to enforce the settlement agreement with respect to the 52% benefit. Avon Lake did not immediately respond to the motion because the parties were still apparently trying to resolve the matter. About five months later, on September 12, 2001. Hehl filed a renewed motion to enforce the settlement. The magistrate judge scheduled the matter for an evidentiary hearing on October 19, 2001.

The day before the scheduled hearing, on October 18, 2001, Avon Lake requested leave to file a response to Hehl's renewed motion, which was granted. The district court also adjourned the October 19, 2001 hearing until March 1, 2002. In its response, Avon Lake challenged the district court's subject matter jurisdiction.

On March 1, 2002, the district court met with the parties in chambers. Hehl characterizes the meeting as an in chambers off-the-record hearing. Avon Lake says it was a status conference. According to Avon Lake, the district court stated that the purpose of the language "parties may supplement final entry within thirty days" was to give the parties the option of requesting that the district court retain jurisdiction to enforce any settlement agreement.

On March 13, 2002, the district court granted Hehl's motion to enforce the settlement agreement. The district court's order states in relevant part:

The Court included the supplementation proviso in the dismissal order as a means to retain jurisdiction over the settlement agreement after dismissal of the action. While perhaps not as explicit as it could have been, the supplementation provisio is sufficient to inform the parties that the Court would retain jurisdiction to enter subsequent orders involving the settlement agreement after

dismissal. *See Re/Max International, Inc. v. Realty One, Inc.,* 271 F.3d 633 (6th Cir.2001).

Having determined that the Court has retained jurisdiction, the Court also finds that the settlement agreement should be enforced. The agreement reached by the parties was that Plaintiff would receive a pension of 52% or for the parties to negotiate an equivalent amount. While it is unfortunate that Plaintiff is unable to collect a 52% pension under PERS. Defendants offered that amount or an equivalent amount should PERS not authorize the purchase of employment services credit. In fact, PERS did not authorize the purchase with the result that Plaintiff is receiving only a 39% pension. Under the terms of the settlement agreement, Defendants must find and provide an amount to make up the shortfall.

Avon Lake appeals, arguing that the district court lacked jurisdiction to enforce the settlement agreement. Avon Lake also argues that even if the district court had jurisdiction, the settlement agreement cannot be enforced due to impossibility of performance, mutual mistake, and/or Hehl's inequitable conduct.

## II. ANALYSIS

We review a district court's decision regarding subject matter jurisdiction *de novo. Hudson v. Coleman,* 347 F.3d 138, 141 (6th Cir.2003). The party seeking to invoke the subject matter jurisdiction of the district court bears the burden of showing that the matter is properly before that court. *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

In *Re/Max International. Inc. v. Realty One, Inc.,* 271 F.3d 633 (6th Cir.2001). cited and relied on by the district court,

this Court had an opportunity to discuss a district court's retention of jurisdiction following a dismissal based on a settlement agreement. We explained:

In *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Supreme Court considered a district court's attempt to enforce a settlement agreement between parties in a diversity action. The parties had settled and filed a stipulation of dismissal with prejudice pursuant to Fed. R. Civ. Pro. 41(a)(1)(ii), which the district court judge then signed. Writing for a unanimous Court, Justice Scalia explained that as courts of limited jurisdiction, federal district courts do not possess the inherent power to vindicate their own authority where parties enter into a voluntary agreement resolving their federal lawsuit. *Id.* at 376–77, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391. Instead, "[e]nforcement of the settlement agreement, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391. However, a district court does have the authority to dismiss pending claims while retaining jurisdiction over the future enforcement of a settlement agreement. *Futernick v. Sumpter Township,* 207 F.3d 305, 310 (6th Cir.2000). The Kokkonen Court noted that such ancillary jurisdiction would have existed if the parties had provided for the court's enforcement of a dismissal-producing settlement agreement through either one of two methods:

[T]he only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement

agreement. The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal-either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a breach of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Kokkonen,* 511 U.S. at 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (emphasis added). *Re/Max,* 271 F.3d at 641–42 (footnote omitted).

Thus, a district court retains jurisdiction to enforce a settlement agreement if it either (1) has language in the dismissal order indicating its retention of jurisdiction, or (2) incorporates the terms of the settlement agreement into the dismissal order.

As to the second exception, it is clear that the dismissal order, which only referenced the fact of settlement, did not incorporate the terms of the settlement. *See Caudill v. N. Am. Media Corp.,* 200 F.3d 914, 917 (6th Cir.2000) (holding that "a dismissal order's mere reference to the fact of settlement does not incorporate the settlement agreement into the dismissal order.").

The first exception—whether the district court retained jurisdiction by a separate provision in the dismissal order—was also at issue in *Re/Max.* The order of dismissal in *Re/Max* stated:

IT IS ORDERED that the docket be marked, "settled and dismissed with prejudice."

FURTHER, [a]ny subsequent order setting forth different terms and conditions relative to the settlement and dis-

missal of the within action shall supercede the within order.

*Id.* at 645.

In *Re/Max,* we held that a district court does not have to expressly state that jurisdiction was retained because *"Kokkonen* only requires a reasonable indication that the [district] court has retained jurisdiction." *Re/Max,* 271 F.3d at 636. Because the district court's dismissal order in *Re/Max* referred to "subsequent orders" and since subsequent orders could only be issued if the district court had retained jurisdiction, we concluded that the district court implicitly retained jurisdiction under *Kokkonen. Id.*

Here the order of dismissal is significantly more equivocal than in *Re/Max.* The order does not imply that there would be any subsequent orders. At most, the order contemplated that the parties may "supplement" the order within thirty days. If they did, then depending on what the "supplementation" was and depending on the district court's response to the "supplementation," there might be a basis for finding a retention of jurisdiction. However, neither party "supplemented" the order within thirty days. To find that the district court retained jurisdiction under the circumstances would be pure speculation. Simply put, the district court's order is not sufficient under *Kokkonen* to establish a retention of jurisdiction.

Hehl makes much of the fact that the district court's second order expressly stated that it had intended to retain jurisdiction. As support, Hehl cites note 14 from *Re/Max* which states:

We are likewise undeterred by the fact that the [district court's] subsequent order of enforcement contained the sentence "This Court shall retain continuing jurisdiction to enforce the provisions of this judgment." ... After [the defendant] attacked the court's jurisdiction

initially, it could only be expected to take every precaution in the future. *Id.* at 645 n. 14.

Hehl reads too much into this statement. The footnote in *Re/Max* simply means that the Court's holding that the district court's first order was sufficient to retain jurisdiction was unaffected by the fact that the district court later expressly stated it had retained jurisdiction. In other words, the district court's subsequent order was irrelevant to the decision that the earlier order contained a reasonable indication that jurisdiction was retained.

Hehl also points to the fact that the district court's order contained a thirty day time limitation does not necessarily preclude a finding of jurisdiction beyond the thirty days, citing *Bell v. Schexnayder,* 36 F.3d 447, 448 (5th Cir.1994). In *Bell,* the order of dismissal stated that the court "having been advised by counsel for the parties that the above action has been settled" was dismissing the case "without prejudice to the right, upon good cause shown within sixty (60) days, to reopen it if settlement is not consummated and seek summary judgment and enforcing the compromise." *Bell,* 36 F.3d at 448. However, the parties in*Bell* petitioned the district court within the sixty days and the Court of Appeals for the Fifth Circuit affirmed the retention of jurisdiction. *Id.* at 449 n. 2. Here, unlike *Bell,* the parties never availed themselves of the district court within the thirty day supplementation period.

Hehl also argues that Avon Lake consented to the district court's jurisdiction by responding to Hehl's motion to enforce the settlement agreement and "failing to object to the court's assertion of its ongoing jurisdiction." This argument lacks merit. It is clear that "subject matter jurisdiction cannot be conferred on federal courts by consent of the parties." *Ford v. Hamilton*

*Investments, Inc.,* 29 F.3d 255, 257 (6th Cir.1994).

In short, we find that the district court's order did not contain a reasonable indication that the district court was retaining jurisdiction. As such, the district court lacked jurisdiction to enforce the settlement agreement. In light of this holding, it is not necessary to address Avon Lake's alternative arguments regarding the district court's enforcement of the settlement agreement.

### III. CONCLUSION

For the reasons stated above, the decision of the district court is REVERSED and this case is REMANDED to the district court to dismiss for lack of jurisdiction.